Filed 12/16/21  P. v. Bernal CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARTURO BERNAL,<br><br>    Defendant and Appellant. | B311547<br><br>(Los Angeles County<br>Super. Ct. No. BA287120-02) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Arturo Bernal, in pro. per., Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

————————

Arturo Bernal and codefendant Jose L. Perez, both members of the Mara Salvatrucha (MS-13) criminal street gang, were convicted following a jury trial of the 2003 murder of a rival gang member in territory claimed by the Leeward clique of MS-13. Both men were found guilty of second degree murder with true findings on firearm-use and criminal street gang enhancements. Bernal was sentenced to an aggregate indeterminate state prison term of 40 years to life. We affirmed the conviction and sentence on appeal. (*People v. Perez* (Jan. 11, 2010, B209761 [nonpub. opn.].)

On February 21, 2019 Bernal, representing himself, filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] asserting he had been convicted of murder under the natural and probable consequences doctrine or felony-murder rule and could not now be convicted of murder because of amendments to Penal Code sections 188 and 189 effective January 1, 2019. Counsel was appointed to represent him.

The prosecutor filed an opposition to the petition arguing, in part, Bernal was ineligible for resentencing as a matter of law because the record of conviction established Bernal was the shooter and had acted with express malice and neither the natural and probable consequences doctrine nor the felony-murder rule had been argued at trial. Appointed counsel and then privately retained counsel filed additional memoranda in support of Bernal's petition.

After hearing argument the superior court denied the petition noting the jury had found true the firearm-use enhancement alleging Bernal had personal used and intentionally discharged a firearm proximately causing death (§ 12022.53, subd. (d)), and ruling "the record

---

[1] Statutory references are to this code.

2

more than adequately presents evidence to conclude that he was a shooter in this case and that he was directly responsible."

No arguable issues have been identified following review of the record by Bernal's appointed appellate counsel. We also have identified no arguable issues after our own independent review of the record and analysis of the contentions presented by Bernal in his supplemental brief. We affirm.

## FACTUAL BACKGROUND

### 1. *The Shooting*

As summarized in our opinion affirming Bernal's and Perez's convictions, in the early morning hours of February 7, 2003 the manager of an apartment building at Magnolia and 8th Street in Los Angeles heard gunshots and men running down the stairs from the roof and out into the street. The manager did not see any of the men's faces. Later that morning the manager went to the roof and found the body of Otto Reyes, a member of the Drifters criminal street gang, a rival of MS-13. Reyes died from three gunshot wounds.

Cesar Ramos, a resident of the building, saw a number of people, including Perez, running down the stairs. Ramos had seen Perez before and was able to identify him from a photo array. No eyewitness identified Bernal. None of the fingerprints found at the scene matched either defendant.

### 2. *The Taped Conversation*

Central to the prosecution's case was the testimony of Jorge Pineda, an FBI informant, and a telephone conversation among Pineda, Bernal and Perez that Pineda had recorded. Pineda understood from his conversation that both Bernal and Perez took credit for the murder.

3

In the taped conversation Perez referred to the murder of the Drifters gang member as an example of how he and Bernal had done "other crazy shit, other work" in the past. Perez told Pineda, "I got that dude good. Ask Little Smiley [Bernal]. Little Smiley did him." At that point in the taped conversation there were sounds like giggling. Perez told Pineda that Gato from the Drifters gang had unknowingly come onto MS-13 territory to buy drugs and Perez led Gato up on the roof. Bernal then interjected that he told another MS-13 gang member that Gato was from "Downfall," a derogatory term for Drifters. That individual approached Gato and hit him. As Gato was getting up, Perez told everyone to move away. Perez said he then "put a piece of metal in his head . . . bang, bang, bang." "And when he was about to hit the ground, Little Smiley was coming and . . . with his: bang, bang, bang. Just because he is stubborn Bro." At that point there was more giggling. Pineda testified he understood from the conversation that both Bernal and Perez were taking credit for the murder.

3. *Jury Instructions*

The trial court instructed the jury with CALJIC Nos. 8.10, defining murder; 8.11, defining express and implied malice; 8.20, explaining the elements of deliberate and premeditated murder; and 8.30 and 8.31, explaining second degree murder. The court also gave a series of instructions regarding voluntary manslaughter and the jury's responsibility to determine which, if any, offense had been committed. In addition, the court defined "principals" (CALJIC No. 3.00) and instructed the jury on the elements of culpability as a direct aider and abettor (CALJIC No. 3.01). There were no instructions on the felony-murder rule or the natural and probable consequences doctrine.

4

4. *Verdict*

The jury convicted Bernal of second degree murder and found true the special allegation that in the commission of the offense Bernal had personally and intentionally discharged a firearm proximately causing the death of Reyes within the meaning of section 12022.53, subdivision (d).  The jury separately found true the special allegation that a principal had personally and intentionally discharged a firearm proximately causing Reyes's death within the meaning of section 12022.53, subdivisions (d) and (e)(1).

## DISCUSSION

1. *Senate Bill No. 1437*

Senate Bill No. 1437 (Stats. 2018, ch. 1015) substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill No. 1437's changes to the definition of the crime.  (*Lewis*, at p. 957; *Gentile*, at p. 843.)

In determining whether a petitioner has carried the burden of making a prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, it is

5

appropriate to examine the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction," (*id.* at p. 972), as are the jury instructions given at trial (see, e.g., *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935).

### 2. *Bernal's Appeal*

In accord with the procedures described in *People v. Cole* (2020) 52 Cal.App.5th 1023, review granted October 14, 2020, S264278, we appointed counsel to represent Bernal on appeal. After reviewing the record, Bernal's counsel filed a brief raising no issues. Appointed counsel advised Bernal on August 24, 2021 that he had 30 days to submit a brief or letter raising any grounds of appeal, contentions or arguments he wanted the court to consider. We thereafter granted Bernal two extensions of time to file his supplemental letter brief.

On November 29, 20, 2021 we received a 10-page handwritten supplemental letter brief (plus exhibits) from Bernal that asserts, in essence, he is entitled to be resentenced under section 1170.95 because CALJIC No. 8.11 instructed the jury that malice is implied when the killing is the natural consequences of an intentional act, performed with knowledge of the danger to, and conscious disregard for human life. Bernal's argument misconstrues the meaning of the "natural consequences" language as required for a finding of implied malice, which relates to proximate cause (the actus reus element of the crime of murder), confusing it with culpability under the natural and probable consequences doctrine as an aider and abettor of a nonhomicide target offense, which concerns the defendant's

6

mental state (mens rea).  (See *People v. Mancilla* (2021)
67 Cal.App.5th 854, 868 & fn. 5.)

As the Supreme Court explained in *Gentile*, *supra*,
10 Cal.5th at pages 843 to 844, "Our law recognizes two forms of
liability for aiders and abettors.  [Citation.]  First under direct
aiding and abetting principles, an accomplice is guilty of an
offense perpetrated by another if the accomplice aids the
commission of that offense with 'knowledge of the direct
perpetrator's unlawful intent and [with] an intent to assist in
achieving those unlawful ends.'  [Citation.]  [¶]  Second, under
the natural and probable consequences doctrine, an accomplice is
guilty not only of the offense he or she directedly aided or abetted
(i.e., the target offense), but also of any other offense committed
by the direct perpetrator that was the 'natural and probable
consequence' of the crime the accomplice aided and abetted (i.e.,
the nontarget offense). . . .  [¶]  Unlike direct aiding and abetting
liability, culpability under the natural and probable consequences
theory does not require an accomplice to share the direct
perpetrator's intent."

Here, whether Bernal or Perez or both of them fired shots
that fatally wounded Reyes, the jury found that Bernal acted
with the requisite mental state (either express or implied malice)
to be found guilty as a principal in Reyes's murder—as the actual
perpetrator or as a direct aider and abettor of the actual
perpetrator who was aware of and shared the perpetrator's mens
rea.  That finding of direct culpability was underscored by the
jury's additional true finding that Bernal had personally and
intentionally discharged a firearm causing Reyes's death.  There
was no imputation of malice, and no finding of guilt based on a
theory of vicarious liability.  (See *People v. Offley* (2020)

7

48 Cal.App.5th 588, 596 ["[o]ne who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].)

Bernal's supplemental letter brief also challenges the sufficiency of the evidence supporting his murder conviction and identifies several purported errors (including judicial misconduct) he claims deprived him of a fair trial in 2008. None of those issues is properly before us in this appeal from the denial of his postjudgment petition for resentencing relief.

Because the record of conviction establishes Bernal was not convicted of murder under the felony-murder rule or the natural and probable consequences doctrine, he is ineligible for resentencing relief under section 1170.95 as a matter of law. The superior court properly denied his petition without issuing an order to show cause. (See *Lewis, supra,* 11 Cal.5th at p. 971.)

Because no cognizable legal issues have been raised by Bernal's appellate counsel or by Bernal or identified in our independent review of the record, the order denying the postjudgment motions is affirmed. (See *People v. Cole, supra,* 52 Cal.App.5th at pp. 1039-1040, review granted; see also *People v. Serrano* (2012) 211 Cal.App.4th 496, 503; see generally *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende* (1979) 25 Cal.3d 436, 441-442.)

## DISPOSITION

The postjudgment order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.